# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **VALARIE MICHELE BYERS,** }<br>}<br>**Plaintiff,** }<br>}<br>v.  }<br>}<br>**MICHAEL J. ASTRUE,** }<br>**COMMISSIONER OF SOCIAL** }<br>**SECURITY,** }<br>}<br>**Defendant.** } | Case No.: 5:10-CV-871-RDP |

## MEMORANDUM OF DECISION

Plaintiff Valarie Michele Byers ("Plaintiff") brings this action pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability, Disability Income Benefits ("DIB") under Title II, and Supplemental Security Income ("SSI") benefits under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be remanded because it was not supported by substantial evidence.

### I. Proceedings Below

Plaintiff filed her applications for a period of disability, DIB, and SSI on March 31, 2006, alleging disability beginning on June 1, 2005. (Tr. 85-89, 91-94, 100). Plaintiff's applications were denied by the Social Security Administration in its decision dated July 13, 2006. (Tr. 57-58, 62-71). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 61). The ALJ conducted a hearing on April 8, 2008 via video teleconference. (Tr. 13, 33-56). Plaintiff appeared

in person at the hearing along with counsel and Ms. Barbara Azzam, a Vocational Expert ("VE"). (Tr. 33-34).

At the time of the hearing, Plaintiff was 41-years old and had completed a master's degree in management. (Tr. 36). Plaintiff had previously worked as an adult education teacher, billing typist, medical billing clerk, administrative secretary, office manager, and library technical assistant. (Tr. 51-52). Plaintiff alleged limitations based on her sleep apnea, degenerative joint disease, urinary incontinence, hypertension, and pain in her back, knees, and thighs. (Tr. 121).

Plaintiff submitted treatment records from various physicians for the time period between January 1999 and March 2008. Plaintiff has been diagnosed with obstructive sleep apnea, osteoarthritis, degenerative joint disease, neuropathy, urinary incontinence, overactive bladder, hypertension, obesity, cardiomyopathy, congestive heart failure, and iron-deficiency anemia.[1] (Tr. 174-411).

Plaintiff was initially diagnosed with sleep apnea after a polysomnogram was performed in January 1999. (Tr. 259, 330-31). Plaintiff underwent a sleep study and CPAP titration in May 2007 at Riverview Regional Medical Center and was observed to have multiple obstructive sleep apneas, desaturation, and snoring. (Tr. 293-95). Plaintiff sleeps with a CPAP machine but reports that she still has trouble sleeping at night. (Tr. 46).

Plaintiff has submitted extensive medical evidence in the record regarding problems with her back and joints. A neurosurgeon, Dr. Christopher Wolfla, performed a left L4-L5 foraminotomy

---

[1] Plaintiff has also been diagnosed with the chronic problems of early diabetes mellitus, gastroesophageal reflux disease, and deviated right eye. Because the ALJ did not find that these were severe impairments, and as Plaintiff has not presented argument about these ailments, the court finds an extensive discussion regarding them is unnecessary.

and discectomy in September 2000 for left L5 radiculopathy and left L4-L5 herniated nucleus pulposus. (Tr. 206-08, 217-19). Dr. Wolfla reviewed x-rays and an MRI scan of Plaintiff's lumbosacral spine prior to surgery, which showed anatomical alignment, narrowing of disc space at L5-S1, severe degenerative disc disease at L4-L5 and moderate degenerative disc disease at L5-S1, and left-sided paracentral disc herniation at L4-L5 that compressed the left L5 nerve root. (Tr. 218). Plaintiff reported relief from left lower extremity pain and numbness following surgery, but continued to report back and left hip pain. (Tr. 197, 200). Dr. Wolfla attributed Plaintiff's left hip pain to hip joint disease. (Tr. 197). Plaintiff began to ambulate with a cane following her back surgery in 2000 and used a cane to walk at the time of the hearing, although she reports being able to ambulate some without the use of a cane. (Tr. 39, 42, 198). X-rays taken of her spine in June 2007 showed small degenerative arthritis spurs and degenerative joint disease of the lumbar spine. (Tr. 410). Osteoarthritis, degenerative joint disease, left neuropathy, and back and hip pain were noted by other treating physicians during various visits at Akins Medical Clinic and Quality of Life Health Services from 2005 through 2008, the date of the latest medical evidence in the record. (Tr. 265, 289-90, 314, 324, 363, 383).

      Akins Medical Clinic diagnosed Plaintiff with incontinence and overactive bladder in 2005, and she was prescribed Enablex for treatment. (Tr. 324-25). Urinary incontinence was also noted by treating physicians from Quality of Life Health Services in 2007. (Tr. 378, 382). Plaintiff testified that her urinary incontinence was aggravated by her prescribed diuretics, and that the incontinence made it difficult for her to teach. (Tr. 37).

      Dr. Darlene Foster, a treating physician, diagnosed Plaintiff with hypertension and obesity in 2000. (Tr. 259). Hypertension and obesity are also noted in the more recent medical records

from Akins Medical Clinic, Quality of Life Health Services, and Central North Alabama Health Services. (Tr. 325, 363, 383). Moreover, Plaintiff takes medication for her hypertension. (Tr. 306).

In June 2006, Plaintiff was seen at Akins Medical Clinic complaining of problems breathing when she was lying down. (Tr. 290). Plaintiff was diagnosed with shortness of breath and congestive heart failure. (Tr. 290). Beginning in November 2006, Plaintiff's medical records from Quality of Life Medical Services and Central North Alabama Health Services frequently note edema. (Tr. 363, 378, 385, 396). Plaintiff was prescribed Lasix, a diuretic. (Tr. 396). Quality of Life Health Services noted cardiomyopathy in May 2007, and Central North Alabama Health Services diagnosed Plaintiff with congestive heart failure in July 2007 and recommended that she have an electrocardiogram. (Tr. 380). In November 2007, Plaintiff's diagnosis noted diastolic congestive heart failure. (Tr. 367). Congestive heart failure was noted on Plaintiff's treatment records from that time until the most recent medical evidence, which was submitted in March 2008. (Tr. 306).

The Disability Determination Service sent Plaintiff for a consultative examination with Terrance Hughes on June 17, 2006. (Tr. 273-77). Dr. Hughes noted that Plaintiff was morbidly obese, reported chest pain when walking and going up stairs, and shortness of breath with exertion. (Tr. 275). A physical examination revealed decreased sensation over the L5 dermatome in the right lower extremity. (Tr. 277). Dr. Hughes diagnosed Plaintiff with failed back surgery syndrome based on her continued complaints of pain following her back surgery. (Tr. 277). Dr. Hughes recommended an EKG and possible treadmill testing or a coronary angiogram to rule out coronary artery disease. (Tr. 277).

## II. The ALJ Decision

In the ALJ's decision dated June 10, 2008, he determined that Plaintiff could perform her past relevant work as an office manager and as an administrative secretary, which did not require her to perform work duties precluded by her residual functional capacity ("RFC"). (Tr. 19). The ALJ determined that Plaintiff was not disabled under the Act, and therefore, not entitled to benefits. (Tr. 19-20). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on February 18, 2010 (Tr. 2-5), that decision became the final decision of the Commissioner and, therefore, a proper subject of this court's review. 42 U.S.C. §§ 405(g), 1383(c).

To establish that a claimant is entitled to a period of disability and disability insurance benefits, the claimant first bears the burden of proving that her disability began during the time that she was insured by Social Security. 20 C.F.R. § 404.131. Thereafter, disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1 *et. seq*. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. Absent such impairment, the claimant may not claim disability. Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If such criteria are met, the claimant is declared disabled.

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. If the claimant is determined to be capable of performing past relevant work, then she is deemed not disabled. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c). In making this determination, the Commissioner will use the Medical-Vocational Guidelines ("MVGs") in Appendix 2 of Part 404 of the Regulations. The MVGs will direct findings of "disabled" or "not disabled" when all of the claimant's vocational factors and RFC match a category listed in the Appendix. When the claimant's vocational factors and RFC do not match a listed category (the claimant is unable to perform the full range of work for her RFC), the ALJ will consider the testimony of a vocational expert. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

In the instant case, the ALJ determined that Plaintiff: (1) met the insured status requirements of the Act through December 31, 2009; (2) did not engage in substantial gainful activity since the amended onset date of her disability of May 30, 2006; (3) has the severe impairments of obesity, obstructive sleep apnea, hypertension, degenerative disc disease, status post foraminotomy and

diskectomy at L4-5, overactive bladder, congestive heart failure, osteoarthritis/degenerative joint disease, and iron-deficiency anemia, as well as non-severe diagnoses of gastroesophageal reflux disease, deviated right eye, and early diabetes mellitus; but (4) has no impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-16). The ALJ stated the following about Plaintiff's RFC:

> [Plaintiff could] meet the exertional demands of light work provided that she is allowed to sit or stand at will. She occasionally can perform postural maneuvers such as balancing, stooping, kneeling, and crouching. She occasionally can climb ramps and stairs but cannot climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to temperature extremes and pulmonary irritants. She cannot work with exposure to hazardous machinery or unprotected heights. She occasionally can use the lower extremities to operate foot controls. She must be allowed brief, unscheduled access to the restroom every two to 2 1/4 hours during the workday, and work must allow for her to wear an incontinence protection pad.

(Tr. 16-17). The ALJ found that this RFC did not prevent Plaintiff from performing her past relevant work as an administrative secretary or office manager. (Tr. 19-20). The ALJ then relied on the testimony of the VE to conclude that there were a number of jobs in the region that allowed a sit/stand option. (Tr. 20).

### III. Plaintiff's Argument for Reversal

Plaintiff presents three arguments for reversing the decision of the ALJ. First, Plaintiff contends that the ALJ did not fully consider her congestive heart failure. (Pl.'s Mem. 10-17). Plaintiff stresses that the ALJ did not discuss her congestive heart failure or how this condition might limit her work capabilities even though he listed it as a severe impairment. (Pl.'s Mem. 11, 15-17). Second, Plaintiff argues that the ALJ did not develop the record with regard to her congestive heart failure by failing to order a consultative cardiology examination. (Pl.'s Mem. 17-21). Third, Plaintiff argues that the ALJ misapplied the pain standard by failing to consider her congestive heart failure, and by discrediting her testimony based on her daily living activities. (Pl.'s Mem. 21-28).

## IV.  Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citation omitted)).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Legal standards are reviewed *de novo*.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## V.  Discussion

In light of the legal standards that apply in this case, the court accepts Plaintiff's argument for remand to the ALJ for further development of the record and full consideration of her congestive heart failure.  For the reasons outlined below, the court finds that the ALJ's decision was not based on substantial evidence and that the proper legal standards were not applied.

**A.     The ALJ Violated His Duty to Develop the Record Regarding Plaintiff's Congestive Heart Failure.[2]**

Plaintiff argues that the ALJ violated his duty to develop the record with regard to her congestive heart failure in two ways. (Pl.'s Mem. 17-21).  First, Plaintiff asserts that the ALJ's duty

---

[2]  As a practical matter, the court will first address Plaintiff's second argument due to the effect this claim has on her other two arguments.

to fully develop the record "required the ALJ to either obtain the echocardiogram from Huntsville Hospital or require that the attorney for the Plaintiff at the ALJ hearing to obtain the echocardiogram." (Pl.'s Mem. 19). Second, Plaintiff asserts that the ALJ was required to order a consultative examination of her to properly evaluate her congestive heart failure. Before discussing each of Plaintiff's arguments specifically, a brief discussion of the general principles underlying the ALJ's duty to develop the record is necessary.

In a disability hearing before an ALJ, both sides have a responsibility to develop evidence. The ALJ's "basic obligation to develop a full and fair record" arises "[b]ecause a hearing before an ALJ is not an adversary proceeding." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Placing this obligation on the ALJ helps the reviewing courts determine if the ALJ's disability determination was supported by substantial evidence. *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1988) (citing *Cowart*, 662 F.2d at 735-36). It is important to remember, however, that a claimant has the burden of proving the existence and severity of her impairments. The claimant also has the burden of proving that she lacks the ability to return to her prior work. *See* 20 C.F.R. §§ 404.1512, 416.912.

The apparent tension between the duty of the ALJ to develop a full and fair record of the claimant's medical conditions and the burden of the claimant to prove her own disability is more easily resolved when specific duties of the ALJ are spelled out in the Regulations. *See, e.g.,* 20 C.F.R. § 416.912(d)(1). Where the Regulations state specific actions that the ALJ must take in order to develop the record, the fact that the claimant has the burden of proof at a particular step cannot alleviate the ALJ of the obligation to take such actions, because to hold otherwise would render the

Regulations on these points superfluous. It is with these general principles in mind that we turn to Plaintiff's argument that the ALJ did not develop the record on her congestive heart failure.

### 1. The ALJ Should Have Obtained Plaintiff's Echocardiogram.

The Regulations direct the ALJ to develop a complete medical history for specified periods. The ALJ is always required to establish a complete medical record for the "12 months preceding the month in which [a claimant] files an application." 20 C.F.R. § 404.1512(d)(2). This alone would not require the ALJ to attempt to obtain Plaintiff's EKG, as this test was performed in 2008. However, Plaintiff also applied for disability insurance benefits and a period of disability. The Regulations state: "If applicable, we will develop your complete medical history for the 12-month period prior to . . . the month you were last insured for disability insurance benefits." 20 C.F.R. § 404.1512(d)(2).

In this case, the ALJ stated as his first finding that Plaintiff was insured for disability benefits until December 31, 2009, however, the ALJ issued his decision on June 10, 2008. (Tr. 15). It would have been impossible for the ALJ to develop the record for the 12-month period prior to December 31, 2009, as this time period had not passed at the time of the ALJ's decision. Nevertheless, the intent of the Regulations is that there be a determination about whether a disability had arisen within a reasonable time period before the last date of the insured period. As such, the ALJ was required to develop Plaintiff's medical evidence for the last 12 months that she was insured, or the date of the hearing.

The ALJ is required to take "every reasonable effort" to develop the medical record. 20 C.F.R. § 404.1512(d). Subsection (d)(1) states that every reasonable effort means:

> that we will make an initial request for evidence from your medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence has

10

>   not been received, we will make one followup request to obtain the medical evidence necessary to make a determination. The medical source will have a minimum of 10 calendar days from the date of our followup request to reply, unless our experience with that source indicates that a longer period is advisable in a particular case.

20 C.F.R. § 404.1512(d)(1). During the hearing, there was a discussion between the ALJ and Plaintiff's attorney about Plaintiff's congestive heart failure and an EKG that had recently been performed at Huntsville Hospital. (Tr. 48-49). However, this EKG is not found anywhere in the record, and there is no indication that the ALJ used every reasonable effort to obtain it. As such, the decision must be remanded for the ALJ to fully develop the record as to Plaintiff's congestive heart failure.

The Commissioner points out in his brief that Plaintiff must make a showing of prejudice before a remand for further development of the record is warranted. (Comm. Br. at 10). Although this is certainly an accurate statement, the Eleventh Circuit has made it clear that "[t]he lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits." *Brown v. Shalala*, 44 F.3d 931, 935-36 (11th Cir. 1995). While it is not necessary to remand whenever a claimant alleges that the ALJ violated his duty to develop a full and fair record, the guidance provided by the Eleventh Circuit is that when "the evidentiary gap involves recent medical treatment[] which the claimant contends supports her allegations of disability" there is a greater likelihood of unfair prejudice. *Id.* at 936 n.9. Because there is nothing in the record to suggest that Plaintiff's EKG does not support her allegations that she is disabled, remand for further development of the record is necessary. *See id.* at 936.

> 2. **The ALJ Was Not Required to Send Plaintiff for a Consultative Cardiology Examination Because There Was No Indication That the EKG Was Unavailable from Plaintiff's Medical Sources.**

Plaintiff argues that the ALJ violated his duty to fully and fairly develop the record because he did not send Plaintiff for a consultative cardiology examination. (Pl.'s Mem. 21). This assertion is off the mark. "The regulations 'normally require' a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources." *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (citing 20 C.F.R. § 404.1519a(b)). In this case, Plaintiff testified that she was administered an EKG at Huntsville Hospital, and the record indicates that a referral was made for this EKG in September 2007. (Tr. 49, 277). This medical evidence never made it into the record and even though there is no indication that it was unavailable from Huntsville Hospital or another of Plaintiff's treating medical sources, the ALJ was not required to send Plaintiff for a consultative cardiology examination.

**B. The ALJ Could Not Have Properly Considered the Impact of All of Plaintiff's Impairments on Her Ability to Work Without the Development of a Full and Fair Record.**

Plaintiff's first argument for remand or reversal is that the ALJ erred by not considering the effects of her congestive heart failure. (Pl.'s Mem. 11). As Plaintiff correctly observes, the only mention of congestive heart failure by the ALJ in his decision is to recite it as a severe impairment. In arriving at a decision, the ALJ is required to consider all of Plaintiff's impairments. 20 C.F.R. §§ 404.1523, 404.1545(a)(2). As Plaintiff points out, there is evidence in the record from multiple treating sources pertaining to her diagnosis of congestive heart failure, and the medical signs and symptoms that arise from that condition. (Pl.'s Mem. 12-15). Furthermore, as previously discussed, the court finds that the ALJ did not fulfill his duty to develop a full and fair record, and without the

full and fair development of the record, it would have been impossible for the ALJ to consider Plaintiff's entire medical condition.

C.  **The ALJ Did Not Properly Apply the Law to Assess Plaintiff's Subjective Complaints of Congestive Heart Failure Without a Full Development of the Record.**

The Eleventh Circuit evaluates pain or other subjective complaints using a three-part test which requires: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). After applying this three part test, the ALJ can then determine if all or a portion of the testimony is not credible as long as specific reasons are given for this finding. *Id.* The ALJ determined that Plaintiff's impairments could reasonably be expected to give rise to her alleged symptoms, but that her testimony was not credible to the extent that it was incompatible with the performance of a reduced range of light work. (Tr. 17). The Regulations also direct the manner by which the ALJ should evaluate subjective complaints: "In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you." 20 C.F.R. § 404.1529(a). Subsection (c)(1) further provides: "we must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled." 20 C.F.R. § 404.1529(c)(1). Because the ALJ failed to consider all of the available objective evidence in this case with which to analyze Plaintiff's subjective complaints of pain and fatigue, it follows that he improperly applied the law when assessing her subjective complaints.

## VI.  Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence and proper legal standards were not applied in reaching this determination.  The Commissioner's final decision is, therefore, due to be remanded and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this     22nd       day of July, 2011.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE